*Attorney Grievance Commission of Maryland v. Yolanda Massaabioseh Thompson*, Misc. Docket AG No. 53, September Term 2017.  Opinion by Hotten, J.

**ATTORNEY DISCIPLINE — SANCTIONS — SUSPENSION**

The Court of Appeals suspended Respondent, Yolanda Massaabioseh Thompson, a member of the District of Columbia Bar, for a period of sixty days, with reinstatement subject to appropriate documentation providing that Respondent has completed a course for solo practitioners, with an emphasis on the responsible maintenance of an attorney trust account.  Respondent violated Maryland Attorneys' Rules of Professional Conduct 19-301.1, 19-301.3, 19-301.4, 19-301.5(a), 19-301.15(a), (b), (c), and (d), 19-301.16(d), 19-305.5(b), 19-308.1(a) and (b), and 19-308.4(a), (c), and (d).  These violations stemmed from Respondent's representation of a former client in a family law matter and from Respondent's failure to adequately safeguard client funds.  Despite Respondent's multiple rule violations, the Court found a number of mitigating factors that warranted sixty-day suspension as the appropriate sanction for Respondent's misconduct.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 53
September Term, 2017

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

YOLANDA MASSAABIOSEH
THOMPSON

_____

Barbera, C.J.,
Greene,
*Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.
Watts, J., concurs

_____

Filed: December 14, 2018

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.



Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

On December 20, 2017, the Attorney Grievance Commission of Maryland, acting through Bar Counsel ("Petitioner"), filed a Petition for Disciplinary or Remedial Action against Yolanda Massaabioseh Thompson ("Respondent"). The misconduct stemmed from Respondent's representation of a former client, Ms. Norma Jean Bess. Specifically, Petitioner alleged that Respondent failed to represent Ms. Bess competently and diligently, failed to communicate with Ms. Bess regarding the status of her matter, failed to refund unearned fees in Ms. Bess's matter, failed to safeguard client funds, abandoned Ms. Bess's matter, practiced in a jurisdiction where she was not authorized to practice law, made a knowingly false statement of material fact, and failed to respond to lawful demands for information during Petitioner's investigation. Based on the misconduct, Petitioner alleged violations of Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-301.1 (Competence), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.5(a) (Fees), 19-301.15(a), (b), (c), and (d) (Safekeeping Property), 19-301.16(d) (Declining or Terminating Representation), 19-305.5(b) (Unauthorized Practice of Law), 19-308.1(a) and (b) (Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct). [1]

On December 21, 2017, this Court transferred the matter to Judge Stacy Wiederle McCormack ("the hearing judge") of the Circuit Court for Anne Arundel County, to conduct an evidentiary hearing ("the hearing"). On January 11, 2018, Respondent was

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified, without substantive change, in Title 19 of the Maryland Rules. Respondent's misconduct occurred both prior to, and after the recodification. For purposes of consistency, we refer to the MARPC throughout this opinion.

served with original process, Petitioner's Interrogatories, Petitioner's Request for Production of Documents, and Petitioner's Request for Admission of Facts and Genuineness of Documents. On February 12, 2018, no answer having been filed, Petitioner filed a Motion for Order of Default. Respondent failed to respond. On February 20, 2018, the circuit court entered an Order of Default and scheduled the matter for a hearing on March 9, 2018. Respondent did not move to vacate the Order of Default and failed to respond to Petitioner's discovery. Pursuant to Maryland Rule 2-424(b),[2] Petitioner's Requests for Admission were deemed admitted. Respondent failed to appear for the hearing scheduled on March 9.

## THE HEARING JUDGE'S FINDINGS OF FACT

We summarize the hearing judge's findings of fact. Respondent was admitted to the Bar of the District of Columbia on February 6, 2012 and the United States District Court for the District of Columbia on November 7, 2016. Respondent is not a member of the Bar of Maryland, nor a member of the United States District Court for the District of Maryland. Respondent maintained an office for the practice of law in Montgomery

---

[2] Maryland Rule 2-424(b) reads, in pertinent part:

> **(b) Response.** Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney. . . .

2

County, Maryland. Respondent maintained a mail drop address at 13842 Outlet Drive, #A161, Silver Spring, Maryland 20904 and resided at 3407 Hampton Hollow Drive, #G, Silver Spring, Maryland 20904. Respondent registered her home address with the District of Columbia Bar. The hearing judge found that Respondent maintained a systematic and continuous legal practice at 13842 Outlet Drive, #A161 and 3407 Hampton Hollow Drive, #G in Maryland from March 28, 2014 through the present.

On August 10, 2016, Respondent caused an overdraft on her attorney trust account (ending 3432) at TD Bank located in Silver Spring, Maryland in the amount of $116.32. On October 3, 2016, Respondent caused another overdraft on her attorney trust account in the amount of $63.49.

On November 23, 2016, Petitioner wrote to Respondent and requested that Respondent provide copies of her client ledgers, deposit slips, cancelled checks, and monthly bank statements. The requested information and documentation was to be provided within ten days, but Respondent failed to respond.

On January 6, 2017, Petitioner wrote to Respondent again, enclosed a copy of the November 23, 2016 letter, and requested a response upon receipt. Respondent failed to respond.

On March 7, 2017, Petitioner wrote to Respondent a third time and enclosed copies of the previous correspondence. Petitioner advised Respondent that the matter had been docketed for further investigation and requested a response within ten days. Respondent failed to respond.

3

On April 26, 2017, having received no response, Petitioner issued a subpoena directed to TD Bank for account records held in the name of the Law Office of Yolanda M. Thompson and Respondent for the period of May 1, 2016 through the date of the subpoena.

On May 5, 2017, Jason P. Bogue, investigator for the Attorney Grievance Commission, traveled to Respondent's home address. Respondent's mother answered the door and indicated that Respondent was not home. Mr. Bogue provided Respondent's mother with his business card and requested that she ask Respondent to contact him. That same day, Respondent called Mr. Bogue and advised that she had closed her attorney trust account in October 2016. She also stated that she exclusively handled bankruptcy matters and therefore, did not have use for an attorney trust account. The hearing judge found that "Respondent's statement, that she exclusively handled bankruptcy matters, was knowingly and intentionally false." Respondent has not represented clients in bankruptcy matters, though she has represented clients in two immigration matters with the United States Citizenship and Immigration Services. Respondent provided her address at 13842 Outlet Drive in each of those filings. The hearing judge found that Respondent's false statement to Petitioner was material, as it was made in an effort to minimize Petitioner's concerns about the overdraft of Respondent's attorney trust account and the unauthorized practice of law in Maryland.

During Respondent's May 5 telephone call with Mr. Bogue, Respondent confirmed that she had received Petitioner's letters dated November 23, 2016, January 6, 2017, and

4

March 7, 2017. Respondent indicated that she would respond to Petitioner in writing that day, but failed to do so.

On May 9, 2017, Mr. Bogue served Respondent with a copy of the subpoena directed to TD Bank and copies of Petitioner's previous correspondence. At that time, Respondent confirmed that the address at 3407 Hampton Hollow Drive, Silver Spring, Maryland was correct. Respondent further advised Mr. Bogue that she would be "formulating" a response to the letters that day. Respondent failed to respond.

On May 16, 2017, Petitioner wrote to Respondent at her home address and the address at 13842 Outlet Drive. Petitioner again requested Respondent's written response to its prior letters and provided Respondent seven days to respond. Respondent failed to respond to this letter or any of Petitioner's prior requests for information.

On May 26, 2017, Petitioner received documents from TD Bank in response to the subpoena. Charles E. Miller, IV, an investigator for the Attorney Grievance Commission, performed an analysis of the account records.

**Respondent's Bank Account Transactions**

On March 28, 2014, Respondent opened an attorney trust account with TD Bank ending in 3432 in the name of the Law Office of Yolanda M. Thompson. She provided a legal address of Outlet Drive, #A161, Silver Spring, MD 20904. Respondent opened a personal account with TD Bank, account number ending 4270, on February 24, 2016. Respondent provided a mailing address of 3407 Hampton Hollow Drive, Apt. G, Silver Spring, Maryland 20904 for the personal account.

From May 2016 to October 2016, Respondent received prepaid legal fees and other funds from clients and third persons. The hearing judge found that Respondent failed to safekeep those funds until the fees were earned or expenses incurred. On May 19, 2016, Respondent deposited a check from clients Lester Mack and Sarankay Mack in the amount of $1,000 into her attorney trust account. On June 15, 2016, Respondent deposited a check from client Norma Jean Bess in the amount of $200.00 with memo "legal services."[3]

Additionally, Respondent deposited personal funds into her trust account, including several deposits from "Synergy LE" totaling $4,462.47, two deposits from "System One" totaling $1,180.86, and numerous deposits from "ARTECH" totaling $7,563.09.

On October 3, 2016, Respondent caused a negative balance in her attorney trust account in the amount of -$63.49 following a disbursement of cash in the amount of $80.00. On October 5, 2016, Respondent made a cash deposit of personal funds in the amount of $100 into her attorney trust account.

On October 24, 2016, Respondent closed her attorney trust account, withdrew all remaining funds in the account in the amount of $1,585.96, including interest in the amount of $ 0.46, to which she was not entitled. On October 25, 2016, Respondent closed her personal account (ending 4270).

The hearing judge found that Respondent failed to segregate the funds of clients and third persons in her possession from her own personal funds. The hearing judge also

---

[3] The record does not reveal why these clients retained Respondent.

found that Respondent used the funds of clients and third persons for her own use and benefit, regularly and improperly withdrawing funds through cash disbursements and personal purchases. From May 2016 to October 2016, Respondent made approximately seventy-five cash disbursements from her attorney trust account. Respondent also made several other disbursements from her attorney trust account including payments to Verizon and life insurance premium payments.

On February 16, 2017, Respondent opened a new personal account with TD Bank, account number ending 6871, and included as a mailing address for that account 3407 Hampton Hollow Drive, Apt. G, Silver Spring, Maryland 20904. From February through April 2017, Respondent deposited multiple checks from one or more clients or third parties directly into that personal account including, but not limited to the following: (i) a check from TIAA in the amount of $2,300 on February 16, 2017; (ii) a check from Hanna Rachel Davies[4] in the amount of $300 on February 25, 2017; and (iii) a check from client Victorine Enterprise LLC[5] in the amount of $300 with memo "Fees [illegible]" on March 28.

**Representation of Norma Jean Bates**

---

[4] Ms. Davies's check to Respondent provided an address of 17 Cedar Grove Avenue, Tyngsborough, Massachusetts, 01828. The hearing judge found that Ms. Davies was Respondent's client, despite Respondent's assertion before us that Ms. Davies was Respondent's aunt.

[5] Victorine Enterprise LLC is an active Maryland business entity registered to the address noted on the March 28, 2017 check to Respondent: 9630 Barrel House, Apt. H, Laurel, Maryland 20723.

Petitioner conducted additional investigation of the payment in the amount of $200 from client Norma Jean Bess to Respondent. Ms. Bess, a District of Columbia resident, retained Respondent to draft two letters in connection with a family matter for $100 per letter. Though Ms. Bess paid Respondent an advance fee of $200, Respondent only drafted one of the two letters. On June 15, 2016, Respondent deposited Ms. Bess's check into her attorney trust account and immediately withdrew $20 in cash. Respondent made numerous other cash withdrawals until Respondent's bank account reached a balance of $12.34 at the end of June 2016. Ms. Bess did not authorize Respondent to withdraw the advance fee of $200 prior to earning the fee in full. Ms. Bess called Respondent multiple times regarding the status of a refund for the second letter. Respondent failed to respond to the calls and failed to refund the amount owed to Ms. Bess. At the time that Respondent represented Ms. Bess, Respondent advised her client that she practiced from her home in Maryland.

## THE HEARING JUDGE'S CONCLUSIONS OF LAW

Based on the aforementioned findings of fact, the hearing judge concluded that the evidence concerning Respondent's representation of Ms. Bess established violations of MARPC 19-301.1 (Competence), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.5(a) (Fees), 19-301.15(a), (b), (c), and (d) (Safekeeping Property), 19-301.16(d) (Declining or Terminating Representation), 19-305.5(b) (Unauthorized Practice of Law), 19-308.1(a) and (b) (Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct). The following are summaries of the relevant MARPC and the hearing judge's reasoning for concluding Respondent violated each part.

8

**Rule 19-301.1 Competence (1.1)**

> An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Respondent failed to provide competent representation to her client, Norma Jean Bess. In *Attorney Grievance Commission v. Brown*, 426 Md. 298, 319, 44 A.3d 344, 357 (2012), this Court held that an attorney violates Rule 19-301.1 when the attorney fails to act in a timely manner that results in harm to clients.

Ms. Bess asked Respondent to draft two letters for a family matter for $100 per letter. Respondent drafted only one of the two letters for which Respondent was compensated. Respondent did not respond to Ms. Bess's inquiries regarding the status of the second letter, resulting in a lack of competent representation.

**Rule 19-301.3 Diligence (1.3)**

> An attorney shall act with reasonable diligence and promptness in representing a client.

Respondent failed to keep Ms. Bess informed about the status of her second letter, constituting a lack of reasonable diligence and promptness. Failing to keep a client informed as to the status of the case and failing to respond to the client's inquiries violates Rule 19-301.3. *See Attorney Grievance Commission v. Park,* 427 Md. 180, 192, 46 A.3d 1153, 1160 (2012) (holding that "Respondent's failure to keep [clients] informed as to the status of [their immigration] applications and [Respondent's] failure to respond to the [clients'] inquiries both violate[d] [MARPC 19-301.3].").

9

**Rule 19-301.4 Communication (1.4)**

> **(a)** An attorney shall:
>> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0(f) (1.0), is required by these Rules;
>> (2) keep the client reasonably informed about the status of the matter;
>> (3) promptly comply with reasonable requests for information; and
>> (4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.
>
> **(b)** An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Paragraphs (a)(2) and (3) of this Rule, respectively, require a lawyer to keep the client "reasonably informed" about the status of the case, and to promptly respond to reasonable requests for information. *Attorney Grievance Commission v. Van Nelson*, 425 Md. 344, 354-55, 40 A.3d 1039, 1045 (2012). Respondent failed to keep Ms. Bess informed regarding the status of the second of two letters Ms. Bess retained her to draft. Respondent further violated Rule 19-301.4 by failing to respond to Ms. Bess's multiple attempts to contact Respondent to obtain the status of the second letter.

**Rule 19-301.5 Fees (1.5)**

> **(a)** An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. . . .

Respondent failed to earn the legal fee associated with drafting Ms. Bess's second letter. The reasonableness of a fee is not measured solely by examining its value at the outset of the representation; an otherwise reasonable fee can become unreasonable if the lawyer fails to earn it. *Attorney Grievance Commission v. Garrett,* 427 Md. 209, 224, 46

10

A.3d 1169, 1178 (2012) (citing *Attorney Grievance Commission v. Brady,* 422 Md. 441, 458, 30 A.3d 902, 912 (2011) (holding that a reasonable fee became unreasonable when respondent-attorney neglected the client's matter and abandoned the client's representation)); *see also Attorney Grievance Commission v. Patterson,* 421 Md. 708, 732, 28 A.3d 1196, 1210 (2011) (holding that a reasonable fee became unreasonable due to respondent-attorney's lacking competence and diligence when representing the client).

Respondent violated Rule 19-301.5(a) when she abandoned Ms. Bess's matter before drafting the second of two letters. Respondent failed to refund the $100 for the second letter.

**Rule 19-301.15 Safekeeping Property (1.15)**

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

(b) An attorney may deposit the attorney's own funds in a client trust account only as permitted by Rule 19-408 (b).

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, an attorney shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by

11

agreement with the client, an attorney shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

***

In *Attorney Grievance Commission v. Hamilton*, 444 Md. 163, 188, 118 A.3d 958, 972 (2015), this Court explained that "[MARPC 19-301.15(a)] requires attorneys to keep the property of clients separate from the lawyer's own property. When the property is money, it must be held in a separate account pursuant to [Title 19, Chapter 403] of the Maryland Rules." (footnote omitted). Respondent violated Rule 19-301.15(a) when she failed to keep the client funds of the Macks, Ms. Bess, Ms. Davies, and Victorine Enterprises, LLC separate from her own personals funds and when she deposited client checks from Ms. Davies and Victorine Enterprises, LLC directly into her personal account.

Respondent violated Rule 19-301.15(b) by depositing personal funds into her attorney trust account. Respondent deposited checks into her attorney trust account from "Synergy," "System One," and "ARTECH." Respondent violated Rule 19-301.15(b) by depositing personal funds from these entities into her attorney trust account.

Respondent violated Rule 19-301.15(c) by failing to maintain advance legal fees in her attorney trust account until earned. Respondent withdrew Ms. Bess's $200 advance fee prior to earning it in full.

Respondent also violated Rule 19-301.15(d). When Ms. Bess attempted to contact Respondent to obtain the status of her matter, Respondent failed to respond to Ms. Bess or

otherwise provide an accounting of the funds.  Respondent failed to return the portion of

the funds to which Ms. Bess was entitled.

**Rule 19-301.16 Declining or Terminating Representation (1.16)**

\*\*\*

**(d)** Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

In *Attorney Grievance Commission v. Logan,* 390 Md. 313, 318-19, 888 A.2d 359,

362-63 (2005), this Court held that attorneys violate Rule 19-301.16(d) when they

abandon their representation of clients, refuse to return client paperwork, and refuse to

engage in further communications.  Respondent violated Rule 19-301.16(d) when she

abandoned Ms. Bess's matter without refunding any portion of her advance payment.

**Rule 19-305.5 Unauthorized Practice of Law; Multi-Jurisdictional Practice of Law (5.5)**

**(b)** An attorney who is not admitted to practice in this jurisdiction shall not:
   (1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or
   (2) hold out to the public or otherwise represent that the attorney is admitted to practice law in this jurisdiction.

\*\*\*

Respondent violated Rule 19-305.5(b)(1) because she maintained a systematic and

continuous legal practice in Maryland for the practice of law, as reflected by several factors.

13

Respondent maintained an office for the practice of law in Montgomery County, Maryland through the use of her home address at 3407 Hampton Hollow Drive, #G, Silver Spring, Maryland, 20904, and a mail drop address at 13842 Outlet Drive, #A161, Silver Spring, Maryland, 20904. Between March 28, 2014, and October 25, 2016, Respondent maintained an attorney trust account and a personal account with TD Bank, both of which were affiliated with Maryland mailing addresses. From February through April 2017, Respondent deposited multiple checks from one or more clients or third parties into her personal account with TD Bank, account number ending 6871. Though Respondent claimed that she was practicing exclusively in the area of bankruptcy law, the record reflects an absence of Respondent's appearance in any bankruptcy matters. Respondent represented Ms. Bess in a family matter and Victorine Enterprises, the Macks and Ms. Davies in other matters.

Respondent violated Rule 19-305.5(b)(2) because she held out to the public that she was entitled to practice law in Maryland, when she was solely licensed in the District of Columbia. Respondent registered her Maryland addresses with TD Bank, told Ms. Bess that she practiced from her home in Maryland, and was retained by Victorine Enterprises LLC, an active Maryland business entity that paid Respondent $300 in legal fees. Respondent does not maintain an office in the District of Columbia, where she is entitled to practice. As such, Respondent violated Rule 19-305.5(b)(2).

14

**Rule 19-308.1 Bar Admission and Disciplinary Matters (8.1)**

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
    **(a)** knowingly make a false statement of material fact; or
    **(b)** fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

Respondent violated Rule 19-308.1(a) and (b) because she misrepresented her area of legal practice during Petitioner's investigation and repeatedly failed to respond to Petitioner's requests for information. When Petitioner notified Respondent of its investigation, Respondent knowingly made a false statement that she exclusively handles bankruptcy matters in violation of Rule 19-308.1(a). This was a false statement of material fact because it was intended to minimize Petitioner's concerns about Respondent's attorney trust account practices and continuous presence in Maryland.

During Petitioner's investigation, Respondent continuously failed to respond to lawful requests for information in violation of Rule 19-308.1(b).

**Rule 19-308.4 Misconduct (8.4)**

It is professional misconduct for an attorney to:

**(a)** violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

***

**(c)** engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
**(d)** engage in conduct that is prejudicial to the administration of justice[.]

15

It is a violation of Rule 19-308.4(a) for an attorney to violate or attempt to violate any of the Rules. Because Respondent has violated Rules 19-301.3, 19-301.4, 19-301.5(a), 19-301.15(a), (b), (c), and (d), 19-301.16(d), 19-305.5(b), 19-308.1(a) and (b), and 19-308.4(a), (c), and (d), it follows that she has violated Rule 19-308.4(a).

Respondent violated Rule 19-308.4(c) for the same reason that she violated Rule 19-308.1(a): Respondent misrepresented her area of practice by claiming she exclusively handled bankruptcy matters. Respondent also violated Rule 19-308.4(c) when she abandoned Ms. Bess's matter and took the full amount of Ms. Bess's advance fee.

In *Attorney Grievance Comm'n v. Rose*, 391 Md. 101, 892 A.2d 469 (2006), this Court held that an attorney's

> failure to promptly, completely and truthfully respond to Bar Counsel's requests for information, to keep his client advised of the status of the representation and to diligently represent the complainant constitutes conduct which tends to bring the legal profession into disrepute and is therefore prejudicial to the administration of justice.

*Id.* at 111, 892 A.2d at 475. Respondent repeatedly failed to respond to requests for information and did not keep her client apprised of her matter in violation of Rule 19-308.4(d). Furthermore, Respondent's conduct, taken as a whole, brings the profession into disrepute and is prejudicial to the administration of justice.

**Aggravating and Mitigating Factors**

This Court has identified aggravating factors it will consider in determining a sanction. The Attorney Grievance Commission has the burden of proving these factors by

clear and convincing evidence. Md. Rule 19-727(c). In *Attorney Grievance Commission of Maryland v. Shuler*, 443 Md. 494, 506–07, 117 A.3d 38, 46 (2015), this Court explained that the following aggravating factors should be considered:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [MARPC]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

As for the aggravating factors, the hearing judge concluded that factors two, four, five, six, seven, ten, and twelve were present.

This Court has also identified mitigating factors that it will consider in determining a sanction. Respondent has the burden of establishing these factors by a preponderance of the evidence. Md. Rule 19-727(c). Mitigating factors include the following:

> Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n of Maryland v. White*, 448 Md. 33, 73, 136 A.3d 819, 842 (2016). Because Respondent failed to appear at the evidentiary hearing and neglected to

17

offer any evidence prior to the hearing, the hearing judge concluded that Respondent did not establish any mitigating factors.

## STANDARD OF REVIEW

It is well established that "[t]his Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance Comm'n of Maryland v. Hodes*, 441 Md. 136, 168, 105 A.3d 533, 552 (2014) (internal quotations omitted). At all times, Petitioner has the burden of proving the allegations against the Respondent by clear and convincing evidence. *Attorney Grievance Comm'n of Maryland v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010); *see also* Md. Rule 19-727(c). As we have often explained:

> We conduct an independent review of the record and accept the hearing judge's findings of fact unless they are clearly erroneous. Deference is accorded to the hearing judge's findings, who is in the best position, as the fact-finder, to assess the credibility of a witness. Findings of fact to which neither party takes exception may be treated by us as conclusively established. However, if exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof outlined in Md. Rule [19–727(c)].[6] We review[,] *de novo*, the hearing judge's conclusions of law.

---

[6] This Court in *White* cited to then-Maryland Rule 16-757(b), which is recodified as 19-727(c) and provides:

> **(c) Burdens of Proof.** Bar Counsel has the burden of proving the averments of the petition by clear and convincing evidence. If the attorney asserts an affirmative defense or a matter of mitigation or extenuation, the attorney has the burden of proving the defense or matter by a preponderance of the evidence.

18

*White*, 448 Md. at 50, 136 A.3d at 828–29 (internal citations, quotations, and brackets omitted).

## DISCUSSION

> Our authority to discipline an out-of-state lawyer who provides legal services in Maryland is reflected in Rule [19-308.5(a)(2)].   Under that rule, an attorney who is not admitted in Maryland is subject to the disciplinary authority of this Court if the attorney, among other things: (1) provides or offers to provide any legal services in Maryland or (2) holds himself out as practicing law in Maryland.  Based on the facts found by the hearing judge, [Respondent] is subject to the disciplinary authority of this Court under both of those prongs.

*Attorney Grievance Commission v. Ndi*, 459 Md. 42, 54, 184 A.3d 25, 32 (2018) (footnote omitted).  Although Respondent is not barred in Maryland, this Court has authority to provide disciplinary sanctions because Respondent held herself out as practicing law in Maryland.

Respondent presented exceptions to the hearing judge's findings of fact and conclusions of law, which Petitioner responded to in a separate filing.  Petitioner's response contends that Respondent has failed to cite any evidence in the record to support the argument that the hearing judge's findings were clearly erroneous.   With regard to Respondent's exception to Rule 19-305.5 (Unauthorized Practice of Law), Petitioner states that there is competent, undisputed, material evidence to support the finding that Respondent maintained an office for practicing law in Montgomery County, Maryland. Petitioner also states that Respondent attempts to offer new evidence, not contained in the record, which is inadmissible based on Petitioner's lack of participation in the disciplinary proceeding.  Petitioner provides this response with regards to Respondent's exceptions to

19

the hearing judge's findings pertaining to Rules 19-308.1(a) (Bar Admission and Disciplinary Authority), 19-301.15 (Safekeeping Property), 19-301.1 (Competence), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.5 (Fees), and 19-301.16 (Declining or Terminating Representation).

Respondent's exceptions to the hearing judge's rulings are presented *infra.*

**Respondent's Exceptions**

As explained *supra*, we accept the hearing judge's findings of fact unless clearly erroneous. *Attorney Grievance Comm'n of Maryland v. Lara*, 418 Md. 355, 364, 14 A.3d 650, 656 (2011). A hearing judge's factual finding is not clearly erroneous "[i]f there is any competent material evidence to support [it]." *YIVO Inst. for Jewish Research v. Zaleski*, 386 Md. 654, 663, 874 A.2d 411, 416 (2005). "We review[,] *de novo*, the hearing judge's conclusions of law." *White*, 448 Md. at 50, 136 A.3d at 829. Given that Respondent did not present further evidence in the record to reveal that the hearing judge's findings were clearly erroneous, we reject Respondent's factual exceptions. Because Respondent's legal exceptions turn on factual contentions, we also overrule Respondent's legal exceptions. Our analysis of specific factual and legal exceptions are explained *infra*. We consider Respondent's exceptions as mitigating factors, also explained *infra*.

*Respondent's Factual and Legal Contentions Concerning Rules 19-305.5(b), 19-308.1(a), and 19-308.4(c)*

Respondent takes exception to the finding that she maintained an office for the practice of law in Montgomery County, Maryland. Respondent states that the address at

20

13842 Outlet Drive in Silver Spring, Maryland is a UPS store, which would be impossible to use as a place of practice or as an office. Respondent asserts that the second address on Hampton Hollow Drive, also in Silver Spring, Maryland, is her personal residence, shared with her elderly mother. Respondent states that her residence could not serve as an office, as it is an inappropriate venue for the running of a business, receiving clients, and conducting other functions which would ordinarily be conducted in an office environment. As such, Respondent disputes violation of Rule 19-305.5(b) (Unauthorized Practice of Law).

Respondent takes exception to the finding that she knowingly and intentionally made a false statement regarding her practice area of law as confined to bankruptcy. Respondent claims that she did not make such a representation to Petitioner's investigator, Mr. Bogue, for the purpose of minimizing Petitioner's concerns about an overdraft in her attorney trust account and the unauthorized practice of law. Respondent asserts that she has never handled a bankruptcy matter, nor did she ever make a representation that she handled such matters. Respondent, citing to Petitioner's investigation, asserts that she primarily handles immigration cases. Because immigration law is governed by federal law, which allows for the practice of law from any State, Respondent contends that she did not intend to mislead or deceive Petitioner by indicating that her area of practice was bankruptcy. Respondent further takes issue with the fact that Petitioner proffered no written or recorded statement showing that Respondent made this misleading representation to Investigator Bogue. As such, Respondent disputes violation of Rule 19-

21

308.1(a) (Knowingly Making a False or Misleading Statement) and 19-308.4(c) (Engaging in Conduct Involving Fraud, Deceit or Misrepresentation).

We find that Respondent maintained a continuous presence in this jurisdiction for the practice of law. Despite Respondent's exceptions that one of her addresses was a post office box and the other was her personal residence, Respondent proffered no evidence on the record to establish that her practice of law took place elsewhere. Furthermore, Respondent's attorney trust account was opened and maintained in Maryland, further establishing her continuous presence for the practice of law in this State. Due to Respondent's assertion to Ms. Bess that she worked from her Maryland home, Respondent also held out that she was admitted to practice law in this jurisdiction. Cumulatively, Respondent violated Rule 19-305.5(b).

The hearing judge found that Respondent misrepresented her practice area of law. There is no evidence on the record to suggest that this finding was clearly erroneous. Petitioner's investigation reveals that Respondent has been involved in immigration matters and has not represented clients in any bankruptcy matters. This is consistent with Respondent's assertion. However, there is nothing in the record to reveal that Respondent did not misrepresent her area of practice. As such, we accept the hearing judge's finding of fact. Because we accept this finding of fact, our analysis of Rules 19-308.1(a) and 19-308.4(c) are consistent with the hearing judge's conclusions of law.

*Respondent's Factual and Legal Contentions Concerning Rule 19-301.15*

Respondent takes exception to particular bank transactions, which she claims were appropriate to deposit into her personal account. Respondent states that the TIAA check in the amount of $2,300 that was deposited into her personal account was for a loan taken from Respondent's TIAA CREF account. Respondent claims that Ms. Hannah Davies was not a client, but rather, her paternal aunt and that depositing the $300 check into her personal account was an appropriate transaction. Respondent further alleges that she was entitled to withdraw $20 of Ms. Bess's $200 because Respondent had already drafted the first of two letters, therefore earning the money withdrawn. As such, Respondent disputes mismanagement of these funds with respect to Rule 19-301.15 (Safekeeping Property). Respondent does admit to some mismanagement with respect to both her attorney trust account and personal account.

Respondent did not appear at the hearing before the hearing judge and produced no evidence to substantiate her claims. Therefore, we do not find the hearing judge's factual findings to be clearly erroneous. By Respondent's own admission, she mismanaged client funds in violation of Rule 19-301.15.

*Respondent's Factual and Legal Contentions Concerning Rules 19-301.1, 19-*
*301.3, 19-301.4, 19-301.5, and 19-301.16*

Respondent takes exception to the hearing judge's findings of fact regarding Respondent's representation of Ms. Bess. Respondent claims that she immediately delivered the first letter to Ms. Bess and proceeded to inquire about the second letter for a

23

period of one year. Ms. Bess repeatedly asked Respondent to 'hold off' as she was attending to other matters. Respondent claims that she pursued the matter and that it was not until approximately July or August 2017 that Ms. Bess contacted Respondent to indicate that she would no longer be proceeding with the second letter. Respondent alleges that she has refunded Ms. Bess her money, provided a receipt of this refund to Petitioner, and has further provided Petitioner with a letter from Ms. Bess that speaks of Respondent favorably. These items, however, are not part of the record and were provided to Petitioner days before oral argument in this Court. As such, we accept the hearing judge's findings of fact, and conclude that Respondent did not competently or diligently represent Ms. Bess, nor did Respondent communicate with Ms. Bess in a prompt manner. Based on the existing findings of fact, which we do not find to be clearly erroneous, Respondent did not return the unearned fee of $100 for the second letter and Respondent effectively abandoned Ms. Bess's case. Accordingly, Respondent violated Rules 19-301.1 (Competence), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.5 (Fees), and 19-301.16 (Terminating Representation).

## SANCTION

We hold that Respondent violated MARPC 19-301.1 (Competence), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.5(a) (Fees), 19-301.15(a), (b), (c), and (d) (Safekeeping Property), 19-301.16(d) (Declining or Terminating Representation), 19-305.5(b) (Unauthorized Practice of Law), 19-308.1(a) and (b) (Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct).

24

We do not find that Petitioner established the following aggravating factors by clear and convincing evidence: a dishonest or selfish motive; submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; bad faith obstruction of the attorney discipline proceeding; refusal to acknowledge the misconduct's wrongful nature; indifference to rectifying the misconduct's consequences; and likelihood of repetition of the misconduct. We find the existence of only one aggravating factor: multiple violations of the MARPC.

We find that Respondent established the following mitigating factors by a preponderance of the evidence: absence of a prior disciplinary record; absence of a dishonest or selfish motive; and inexperience in the practice of law. Respondent, before this Court, admitted to mishandling client funds in violation of Rule 19-301.15 due to her inexperience. Respondent also admitted to opening and maintaining her attorney trust account and her post office box in Maryland rather than the District of Columbia due to errors attributable to her lack of experience as an attorney.

This Court considers aggravating and mitigating factors in fashioning sanctions. *Ndi*, 459 Md. at 63, 184 A.3d at 37. Maryland Rule 19-741(c)(1) provides that this Court "may order (A) disbarment, (B) suspension, (C) a reprimand, (D) placement on inactive status, (E) dismissal of the disciplinary or remedial action, or (F) a remand for further proceedings." Petitioner requests disbarment, while Respondent requests a lesser sanction. Respondent recommends that she be required to attend trainings concerning sound practice management, including management of her attorney trust account. In *Attorney Grievance*

25

*Commission of Maryland v. Walker-Turner, Sr.,* 428 Md. 214, 233, 51 A.3d 553, 564 (2012), we stated:

> In imposing sanctions in attorney discipline matters, our aim is to protect the public and the public's confidence in the legal profession rather than to punish the attorney . . . [and] to deter other lawyers from violating the [MARPC]. We evaluate the facts and circumstances of each case to ensure that the attorney's sanction is commensurate with the gravity and intent of the misconduct.

(internal quotations and citations omitted). Given the existence of multiple mitigating factors, we believe that the appropriate sanction that protects the public and the public's confidence in the legal profession and is commensurate with the gravity of Respondent's violations is a suspension of sixty days with appropriate documentation providing that Respondent completes a course emphasizing responsible maintenance of an attorney trust account.

In *Attorney Grievance Commission v. Floyd,* 400 Md. 236, 239, 929 A.2d 61, 62-63 (2007), Respondent violated Rule 19-308.4(c) (Misconduct) "when, during an employment application process for a legal position, in order to secure a higher salary, [Respondent] acted intentionally to deceive the Federal Trade Commission into believing that she and her husband had a 'purely' employer-employee relationship." In fashioning a sanction, we considered that Respondent's misconducted reflected dishonesty that could not be rectified with a reprimand. However, we also considered mitigating factors, which included Respondent's lack of a prior disciplinary record; recognition that her violation was not a pattern of misconduct; and Respondent's acknowledgement of her error. Cumulatively, we decided that the appropriate sanction was a ninety-day suspension.

26

We use *Floyd* to illustrate the importance of striking a balance between protecting the public and crafting an appropriate sanction with mitigating factors in mind. In the instant case, Respondent's absence of a prior disciplinary record, lack of a dishonest or selfish motive, and inexperience in the practice of law function as mitigating factors. Respondent's own admission regarding mishandling of her attorney trust account enables us to fashion a sanction of a sixty day suspension with appropriate documentation providing that Respondent completes a course emphasizing responsible maintenance of an attorney trust account. This sanction not only accounts for mitigating factors, but also addresses our concern regarding Respondent's mismanagement of client funds. Because we do not find a likelihood of repetition for Respondent's other violations by clear and convincing evidence (*see supra*), this is an appropriate sanction that protects the public and the public's confidence in the legal profession and ensures that the sanction is commensurate with the gravity of the misconduct.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST YOLANDA MASSAABIOSEH THOMPSON.**

27

Circuit Court for Anne Arundel County
Case No. C-02-CV-17-003837
Argued: October 3, 2018

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 53

September Term, 2017
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

YOLANDA MASSAABIOSEH THOMPSON
_____

Barbera, C.J.
Greene
*Adkins
McDonald
Watts
Hotten
Getty,

JJ.
_____

Concurring Opinion by Watts, J.
_____

Filed:  December 14, 2018

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Md. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Respectfully, I concur in the judgment only. I agree with the Majority that Yolanda Massaabioseh Thompson, Respondent, violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Reasonable Fees), 1.15(a), 1.15(b), 1.15 (c), 1.15(d) (Safekeeping Property), 1.16(d) (Terminating Representation), 5.5(b) (Unauthorized Practice of Law), 8.1(a), 8.1 (b) (Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MARPC). See Maj. Slip Op. at 24. I also agree with the Majority that the appropriate sanction for Thompson's misconduct is a sixty-day suspension from the practice of law in Maryland, with reinstatement conditioned on her completion of a course with an emphasis on responsible maintenance of an attorney trust account. See id. at 26. I write separately, however, to set forth my views as to why a sixty-day suspension is the appropriate sanction.

In my view, Thompson has not engaged in the type of intentionally dishonest conduct that warrants disbarment. To explain why, I will briefly review the relevant circumstances of the case.

In the Petition for Disciplinary or Remedial Action, Bar Counsel alleged that, among other things, during a May 5, 2017 telephonic conversation with an investigator for Bar Counsel, Thompson falsely stated that she exclusively handled bankruptcy cases. According to Bar Counsel, Thompson does not handle bankruptcy cases, and this statement was an attempt by Thompson to mislead the investigator as to the nature of her practice in order to undermine the allegation that she had engaged in the unauthorized practice of law.

Later, after the conversation with the investigator, Thompson failed to file an answer to the Petition for Disciplinary or Remedial Action. Bar Counsel filed a Motion for Order of Default, which the hearing judge granted. Thompson did not move to vacate the Order of Default.

After the hearing, the hearing judge found the following facts. Although Thompson is not a member of the Bar of Maryland, she maintained an office for the practice of law in Montgomery County. After Thompson caused two overdrafts on her attorney trust account in August 2016 and October 2016, Bar Counsel wrote to her on three occasions, requesting certain financial records. Thompson did not respond. On May 5, 2017, Thompson telephoned Bar Counsel's investigator and said that she had closed her attorney trust account in October 2016, and that she did not need an attorney trust account because she exclusively handled bankruptcy cases. Thompson's statement was false because she had never handled a bankruptcy case; instead, she practiced in other areas, such as immigration law.

The hearing judge reasoned that Thompson's false statement concerned a material fact because "she made it in an effort to minimize Bar Counsel's concerns about the overdraft of [her] attorney trust account and the unauthorized practice of law in Maryland." The hearing judge concluded that Thompson violated MARPC 8.1(a) and 8.4(c) by knowingly making a false statement of material fact to Bar Counsel's investigator. Before this Court, Thompson excepted to the hearing judge's finding that she told Bar Counsel's investigator that she exclusively handled bankruptcy cases. Thompson acknowledged that she had never handled a bankruptcy case, but denied that she had ever represented

otherwise. Thompson alleged that, instead, she had "handled mainly immigration cases[.]" Thompson stated: "Because immigration law is governed by federal law[,] which allows for the practice of law from any of the 50 [S]tates, [Thompson] would have no motivation to mislead or deceive Bar Counsel by indicating that her area of practice is bankruptcy." At oral argument, Senior Assistant Bar Counsel confirmed that Thompson mostly practiced immigration law, and had never handled a bankruptcy case.

Because, however, Thompson failed to file an answer to the Petition for Disciplinary or Remedial Action, and because the hearing judge issued an Order of Default and did not subsequently vacate it, Bar Counsel's allegation in the Disciplinary or Remedial Action that Thompson falsely stated to Bar Counsel's investigator that she exclusively handled bankruptcy cases is to be deemed admitted. As this Court explained in Attorney Grievance Comm'n v. Johnson, 450 Md. 621, 640, 150 A.3d 338, 349 (2016), "averments in Petitions for Disciplinary or Remedial Action are to be treated as admitted where a lawyer failed to timely file an answer and the hearing judge entered an order of default." In short, it has been established that Thompson made a misrepresentation to Bar Counsel's investigator by stating that she handled bankruptcy cases.

That said, neither the hearing judge's findings of fact, nor Bar Counsel's allegations in the Petition for Disciplinary or Remedial Action, demonstrates that Thompson's statement warrants disbarment. Obviously, when speaking with the investigator, Thompson knew that Bar Counsel could easily verify the fields in which she practiced—and Bar Counsel did exactly that. Thompson had nothing to gain by intentionally misrepresenting that she practiced bankruptcy law, rather than truthfully stating that she

practiced immigration law. Both bankruptcy law and immigration law are governed by federal law; accordingly, regardless of whether Thompson practiced bankruptcy law or immigration law, she did not practice in a field that was governed by Maryland law. And, Bar Counsel did not allege that Thompson engaged in the unauthorized practice of Maryland law before Maryland courts; instead, Bar Counsel alleged that Thompson engaged in the unauthorized practice of law by having an office for the practice of law in Maryland.

Although the hearing judge reasoned that Thompson's misrepresentation that she practiced bankruptcy law was an attempt to cover up her unauthorized practice of law, Bar Counsel verified that Thompson actually handled immigration cases; and, the handling of such cases would not have constituted the unauthorized practice of law in Maryland. The record is unclear as to why Thompson told the investigator that she handled bankruptcy cases and not immigration cases. But, in my view, it is clear that this is not the type of misrepresentation that would warrant disbarment. Thompson essentially told Bar Counsel's investigator that she handled bankruptcy cases that would not constitute the unauthorized practice of law in Maryland, and, she in fact handled immigration cases that would not constitute the unauthorized practice of law. From my perspective, this is simply not the type of intentional dishonesty that would require "compelling extenuating circumstances" to excuse or that would warrant disbarment. See Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 418, 414,773 A.2d 463, 488, 485 (2001) ("Disbarment ordinarily should be the sanction for intentional dishonest conduct. . . . Only if the circumstances are [] compelling, will we even consider imposing less than the most

severe sanction of disbarment in cases of . . . dishonesty[.]").[1]

From my perspective, the Majority fails to make the point that Thompson's conduct does not constitute the type of intentional dishonesty for which disbarment is warranted. Rather, the Majority Opinion suggests that there are mitigating factors that cause the sixty-day suspension to be the appropriate sanction. Specifically, the Majority states:

> Given the existence of multiple mitigating factors, we believe that the appropriate sanction that protects the public and the public's confidence in the legal profession and is commensurate with the gravity of Respondent's violations is a suspension of sixty days with appropriate documentation providing that Respondent completes a course emphasizing responsible maintenance of an attorney trust account.

Maj. Slip Op. at 26. I fear that, in future attorney discipline proceedings, practitioners who have committed acts of intentional dishonesty will rely on the Majority Opinion for the proposition that their misconduct does not warrant disbarment by virtue of general mitigating factors, rather than compelling extenuating circumstances. In my view, given the nature and circumstances of Thompson's false statement, I concur that a sixty-day suspension is sufficient in this case to protect the public.

---

[1]Like the Majority, I note that Thompson's misconduct is mitigated by inexperience in the practice of law and the absence of prior attorney discipline or a dishonest or selfish motive. See Maj. Slip Op. at 25. Additionally, like the Majority, I note only one aggravating factor: multiple violations of the MARPC. See id. Under these circumstances, I agree with the sanction that the Majority imposes.